[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12144
_____

D.C. Docket No. 1:14-cv-00810-WSD


LABMD, INC.,

Plaintiff - Appellant,

versus

FEDERAL TRADE COMMISSION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 20, 2015)

Before MARTIN and ANDERSON, Circuit Judges, and COTE,[*] District Judge.

MARTIN, Circuit Judge:

LabMD, Inc. is an Atlanta-based laboratory that performed cancer-detection testing services for doctors.  After the Federal Trade Commission (FTC) discovered that LabMD patient information files were available on a peer-to-peer file-sharing network, it launched an investigation into LabMD's data-security practices.  The investigation persisted for three years, leading LabMD's CEO, Michael Daugherty, to publicly criticize the FTC's actions.  Shortly after Mr. Daugherty posted an online trailer for his book, "The Devil Inside the Beltway," which he says exposes corruption in the federal government, the FTC filed an administrative complaint against the company.  The administrative proceeding is ongoing.

This appeal addresses the District Court's dismissal of LabMD's challenges to the FTC's ability to regulate and conduct enforcement proceedings in the area of healthcare data privacy.  LabMD argues that the FTC's enforcement action violates the Administrative Procedure Act (APA), is ultra vires, and is unconstitutional.

Before we can reach the merits of LabMD's claims, we must first face the central question of whether the District Court has subject-matter jurisdiction to consider LabMD's challenges while the administrative proceeding is ongoing.

---

[*] Honorable Denise Cote, United States District Judge for the Southern District of New York, sitting by designation.

Because we hold that the FTC's Order denying LabMD's motion to dismiss was not a "final agency action," as is required of claims made under the APA, those claims were properly dismissed. And because we conclude that LabMD's other claims—that the FTC's actions were ultra vires and unconstitutional—are intertwined with its APA claim for relief and may only be heard at the end of the administrative proceeding, we affirm the District Court's order dismissing the case for lack of subject-matter jurisdiction.

## I.

In 2008, internet-security company Tiversa, Inc. notified LabMD that it had obtained sensitive patient information from LabMD. Under circumstances that remain hotly disputed by the parties, the FTC learned about the possible breach of security involving patient information and began an investigation into LabMD's data-security practices in 2010. On July 19, 2013, Mr. Daugherty posted an online trailer to his book highlighting corruption in the federal government, including specific claims about the FTC. Three days after Mr. Daugherty posted the trailer online, the FTC gave notice of its intent to file a complaint against LabMD.

In August 2013, the FTC filed its administrative complaint, alleging that LabMD violated Section 5 of the FTC Act by engaging in an "unfair . . . act[] or practice[]" by failing to prevent unauthorized access to its patient information. LabMD moved to dismiss the FTC Complaint, which the FTC denied in a January

3

2014 Order.  LabMD next filed suit in the District Court for the District of Columbia, seeking an injunction to stay the administrative action from going forward on the grounds that it was an improper expansion of FTC jurisdiction, was retaliatory, and violated the Due Process Clause.  LabMD v. FTC, No. 1:13-cv-1787 (D.D.C. Nov. 14, 2013).  LabMD filed a similar action in this Court, making the same allegations.  LabMD Inc. v. FTC, No. 13-15267-F (11th Cir. Feb. 18, 2014).  We denied LabMD's claim, citing our lack of jurisdiction over a non-final agency action, but we declined to address whether the District Court could hear any of the claims.  Id.  LabMD voluntarily dismissed its District of Columbia suit.

On March 20, 2014, LabMD filed this suit in the Northern District of Georgia, alleging that: (1) the FTC's administrative action against LabMD is arbitrary and capricious in violation of the APA because the FTC has no authority to regulate protected health information (PHI); (2) the action is ultra vires and exceeds its statutory authority; (3) the FTC's application of Section 5 to LabMD's security protocols violates the Due Process Clause of the U.S. Constitution because it did not provide fair notice or access to a fair tribunal and a hearing; and (4) the FTC violated LabMD's First Amendment right to free speech.  The FTC filed a motion to dismiss, which the District Court granted.

II.

We review de novo a district court's grant of a motion to dismiss for lack of subject-matter jurisdiction. Cash v. Barnhart, 327 F.3d 1252, 1255 n.4 (11th Cir. 2003) (per curiam). The District Court dismissed LabMD's APA claim for lack of subject-matter jurisdiction because the FTC's Order denying dismissal was not a final order. The District Court also dismissed the related constitutional and ultra vires claims as premature. We first turn to LabMD's challenge under the APA. LabMD argues that the Complaint and Order were sufficiently final to confer subject-matter jurisdiction over its APA claim. We cannot agree.

According to the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. Absent a final action, the courts are to exercise restraint so that the administrative agency may correct any errors by conducting its own internal appeals and by applying its own institutional expertise. The Supreme Court has held that an action must satisfy two requirements to be final: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177–78, 117 S. Ct. 1154, 1168 (1997) (internal citations and quotation marks omitted).

5

Under the Bennett standard, the Order and Complaint LabMD seeks to have us review are not final.  First, neither document is a consummation of the agency's decisionmaking process.  LabMD suggests that these documents "effectively determined there would be legal consequences imposed on LabMD," because the filing of an FTC complaint almost certainly leads to a cease-and-desist order.  But, high odds of a cease-and-desist order coming from the FTC do not advance our ability to review the FTC actions.  It is the nature of the action we must consider, and the Complaint and Order do not finally decide these issues.  By definition, the denial of a motion to dismiss ensures that the proceeding will continue to a later, final order.  In the same way, a complaint is just an initial document.

Next, no "direct and appreciable legal consequences" flowed from either FTC action, and "no rights or obligations have been determined," because the agency proceeding is ongoing.  See Bennett, 520 U.S. at 178, 117 S. Ct. at 1168–69.  LabMD argues that, on two occasions, the FTC characterized its Order as final, and therefore we must accept it as such.  First, the FTC described its Order here as a "definitive interpretation of the application of Section 5."  Second, the FTC sought Chevron[1] deference for this Order in another case.  See FTC v. Wyndham Worldwide Corp., 10 F. Supp. 3d 602, 615 n.8 (D.N.J. 2014).  True as

_____

[1] Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984). Chevron deference is afforded only to final agency actions operating with the force and effect of law, Christenson v. Harris Cnty., 529 U.S. 576, 587, 120 S. Ct. 1655, 1662–63 (2000).

6

this may be, we are not required to agree with the FTC's characterization of its own Order in the course of litigation. See, e.g., Inv. Co. Inst. v. Camp, 401 U.S. 617, 628, 91 S. Ct. 1091, 1097–98 (1971); William Bros. v. Pate, 833 F.2d 261, 265 (11th Cir. 1987) ("[W]e do not agree that the [agency's] mere litigating position is due to be given deference. . . . [T]he Supreme Court has on a number of occasions proscribed granting deference to a litigating position . . . ."). And while it would be notable that some other court had afforded Chevron deference to the FTC's Order—because that would imply a finding of finality—the court in the case proffered by LabMD did not afford Chevron deference. The FTC merely asked for it.

Even though the Supreme Court has previously held that an FTC complaint is not final agency action, see FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 239, 101 S. Ct. 488, 493 (1980), LabMD suggests that its challenge to the FTC's jurisdiction can be heard at this early stage in the administrative proceeding because it falls within an exception to Standard Oil. Later circuit court cases interpreting Standard Oil suggest that its holding does have limited exceptions which would allow district court review of administrative actions. See, e.g., Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n, 707 F.2d 1485, 1489 & n.30 (D.C. Cir. 1983) (recognizing an exception to the exhaustion requirement and permitting district court review of an agency's authority to impose civil penalties);

7

CSI Aviation Servs., Inc. v. U.S. Dep't of Transp., 637 F.3d 408, 412–13 (D.C. Cir. 2011) (holding that a Department of Transportation warning letter and exemption order were sufficiently "final" because they (1) included a definitive statement that the plaintiff's business was violating the Federal Aviation Act; (2) presented a "purely legal" question with no factual disputes; and (3) imposed an immediate burden by effectively requiring the business to stop operating).  Even if those exceptions applied in this Circuit, LabMD's challenge here does not fit within their terms.  As set forth in our discussion above, the FTC Complaint and Order are not sufficiently definitive, cleanly legal, or immediately burdensome so as to require our review at this stage.  The FTC is best suited to develop the factual record, continue to evaluate its position on the issues, and apply its expertise to complete the proceeding.  All of this will allow for more robust appellate review by this Court when the action concludes.

## III.

LabMD next suggests that its constitutional and ultra vires claims can be heard even if we do not reach the APA claim.  But under similar circumstances, the Supreme Court has declined to consider constitutional claims before the administrative process was completed.  See Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215, 114 S. Ct. 771, 780 (1994) (holding that the district court did not have subject-matter jurisdiction to hear a pre-enforcement due process challenge).

The Court in Thunder Basin emphasized that the claims "c[ould] be meaningfully addressed in the Court of Appeals" after final agency determination.  Id.  Our own Court's decision in Doe v. FAA, 432 F.3d 1259 (11th Cir. 2005), also clarifies that all constitutional claims must be funneled through the direct-appeal process after a final agency action if that is the scheme created by Congress.  Id. at 1262–63.  The FTC Act provides for appellate review by the Courts of Appeals after the agency action is complete, see 15 U.S.C. § 45(c), and similar to the challenger in Doe, LabMD's claims can be heard at that time.

LabMD cites National Parks Conservation Association v. Norton, 324 F.3d 1229, 1241 (11th Cir. 2003), to say that, absent an explicit provision limiting constitutional review in the agency's enabling statute, the federal courts should always be able to hear well-pleaded complaints.  Though it is true that in Norton we addressed the merits of an equal-protection claim after finding that agency action was not sufficiently final to confer jurisdiction over a connected APA claim, nothing in that holding requires us to do the same here.  Though there is tension between Norton on one hand and Thunder Basin and Doe on the other, we conclude that LabMD's constitutional claims should be heard only upon completion of the agency proceedings.  We have consistently looked to how "inescapably intertwined" the constitutional claims are to the agency proceeding, reasoning that the harder it is to distinguish them, the less prudent it is to interfere

9

in an ongoing agency process.  See Doe, 432 F.3d at 1263; Green v. Brantley, 981 F.2d 514, 521 (11th Cir. 1993) (declining to reach the merits of a constitutional challenge that was "inescapably intertwined with a review of the procedures and merits surrounding the [agency's] order").  LabMD's claims cannot now be heard because the facts supporting them are indistinguishable from those relating to the procedures and merits of the FTC action.

LabMD suggests that its First Amendment retaliation claim—alleging that the FTC brought its Complaint to retaliate against LabMD for Mr. Daugherty's book— is less intertwined with the enforcement proceeding than its other constitutional claims.  This, LabMD contends, is because the retaliatory conduct was complete at the moment the Complaint was filed.  LabMD suggests that the District Court need only examine the filing of the FTC's Complaint to determine whether it was retaliatory in violation of the First Amendment.  Any later developments in the administrative proceeding, LabMD reasons, have no bearing on whether the filing of the Complaint itself was retaliatory.  Thus, LabMD concludes that the matters are not intertwined, and its retaliation claim should be heard even before the administrative proceeding ends.

Even if we were to accept LabMD's distinction as true, none of our cases suggest that First Amendment retaliation claims must be treated differently than other constitutional claims under Thunder Basin and Doe.  We conclude that

10

LabMD's First Amendment claim must join its other claims to await appellate review after the Commission's proceedings are final, as Congress contemplated in the FTC Act.

The District Court correctly held that it did not have jurisdiction over LabMD's claims. And until the administrative proceeding is complete, we too have no jurisdiction to evaluate the merits. We **AFFIRM** the District Court's Order dismissing the case for lack of subject-matter jurisdiction.