CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court on Defendants, United States Citizenship and Immigration Services ("USCIS"), the Department of Homeland Security ("DHS"), USCIS Director L. Francis Cissna, DHS Secretary Kirstjen Nielsen, and USCIS California Service Center Director Kathy A. Baran's Motion to Dismiss [ECF No. 37]. The Court has carefully reviewed Plaintiffs, Canal A. Media Holding, LLC ("Canal Media") and Erick Archila's ("Archila['s]") First Amended Complaint [ECF No. 36] ("FAC" or "Amended Complaint"); Plaintiffs' Response in Opposition [ECF No. 38] ("Pls.' Resp."); Defendants' Reply Memorandum [ECF No. 47] ("Defs.' Reply"); Plaintiffs' Surreply in Opposition [ECF No. 54] ("Pls.' Surreply"); Defendants' Sur-Reply to Plaintiffs' Surreply [ECF No. 56] ("Defs.' Surreply"); exhibits [ECF Nos. 37-1, 37-2, 47-1, 55-1]; and applicable *1315 law. For the following reasons, the Motion is granted.
I. BACKGROUND
A. The Amended Complaint
This case concerns the USCIS's decision to deny an L-1A petition filed by Canal Media, a U.S. subsidiary of Guatemalan news and entertainment media company Canal Antigua, S.A. ("Canal Antigua"), at the behest of the parent company, which sought to transfer the parent company's president, Mr. Archila, to Canal Media. (See FAC ¶ 2). Canal Media sought to employ Mr. Archila as its president to oversee the company's expansion into the U.S. broadcasting and media market, but the USCIS denied the L-1A petition because Canal Media was not Canal Antigua's subsidiary. (See id. ). The USCIS's conclusion is an abrupt shift in the agency's adjudicatory criteria for L-1A petitions. (See id. ¶ 3).
Under 8 C.F.R. section 214.2(l)(ii)(K), defining "subsidiary," a U.S. company is a qualifying subsidiary if it is owned and controlled by a foreign company. (See id. ). Plaintiffs allege Canal Media satisfies the ownership and control prong of the "subsidiary" test. (See id. ¶ 4). Nevertheless, the USCIS concluded Canal Media is not Canal Antigua's subsidiary because the latter never made a capital contribution in exchange for its ownership interest. (See id. ¶ 5). Plaintiffs assert no statute, regulation, or precedent supports the USCIS's "capital contribution" requirement. (See id. ¶ 6). This new "capital contribution" rule contravenes the agency's published rule, constitutes an impermissible retroactive application of a new adjudicatory policy, and violates Canal Media's due process of law. (See id. ¶ 8). Plaintiffs state the "Court should reverse USCIS's unlawful actions." (Id. ).
The Amended Complaint goes on to detail the statutory and regulatory framework governing L-1A non-immigrant petitions, including working for a foreign company with a qualifying relationship to a U.S. employer for at least one year in the preceding three years, and the intention the person will work in an executive or managerial capacity. (See id. ¶ 9 (citations omitted); see also ¶¶ 10-12). Plaintiffs describe the corporate relationship between Canal Antigua and Canal Media. (See id. ¶¶ 13-15). On November 25, 2016, Canal Media filed an I-129 petition to secure L-1A status for Mr. Archila, Canal Antigua's former president. (See id. ¶ 16). At the time, Mr. Archila was in the United States on a B-2 tourist status. (See id. ¶ 18).
Plaintiffs devote several paragraphs of the Amended Complaint describing how the visa adjudication policy has made an abrupt shift following the 2016 presidential election. (See id. ¶¶ 19-26). Plaintiffs return to their charge the USCIS denied the L-1A petition based on a novel "capital contribution" requirement, notwithstanding Canal Antigua has complete ownership and control over Canal Media. (See id. ¶¶ 27-33). Plaintiffs attach to the Amended Complaint the USCIS's July 24, 2017 denial of the I-129 petition. (See id. ¶ 30 (citing Ex. A) ). On "information and belief," Plaintiffs allege:
USCIS's insistence that Canal A Media present proof that it received a "capital contribution" from its Guatemalan parent corporation to establish that it is a "subsidiary" results from an internal policy directive within USCIS, adopted in furtherance of the President's "Buy American and Hire American" Executive Order and the Trump Administration's broader agenda to curtail lawful immigration to the United States.
(Id. ¶ 33).
Plaintiffs state the Court has federal question subject matter jurisdiction under *1316 28 U.S.C. section 1331 because the case arises under the laws of the United States; the Immigration and Nationality Act ("INA"), related agency regulations, and the Administrative Procedure Act ("APA"), 5 U.S.C. section 701. (See id. ¶ 41).[1] Plaintiffs allege the USCIS issued its decision denying Canal Media's L-1A petition on July 24, 2017, and Plaintiffs have exhausted administrative remedies. (See id. ¶ 42). They assert the APA allows judicial review of agency decisions when, as here, no law or regulation requires interagency review before seeking judicial review. (See id. ).
Plaintiffs state four claims for relief. The first claim is titled, "Arbitrary and Capricious Agency Action in Violation of the APA and the INA," in which Plaintiffs allege the USCIS's denial of the petition should be set aside under 5 U.S.C. section 706(s)(A). (Id. 13-14). The second claim is titled, "Failure to Follow Notice and Comment Procedures," alleging the USCIS's retroactive application of its new "capital contribution" rule violates the APA's requirement agencies post notice of proposed rulemaking in the Federal Register and allow public comment. (Id. 14-15). The third claim is titled, "Impermissible Retroactive Application of Agency's New Rule," raising allegations similar to the second claim. (Id. 15-16).
The fourth claim is titled, "Violation of Canal A Media's Right to Due Process" (id. 16), in which Plaintiffs allege:
USCIS Director Francis Cissna and members of the Trump Administration ... caused USCIS to adopt adjudicatory policies specifically implemented to increase the denial rate of L-1A petitions without regard to actual eligibility under the statute and regulations. These policy changes were responsible for USCIS's denial of Canal A Media's L-1A petition ....
(Id. ¶ 60 (alteration added) ). The due process claim also relies on allegations about the retroactive application of a new requirement for establishing a subsidiary relationship, which according to Plaintiffs, the USCIS has used as a "cover for the denial of otherwise approvable petitions ...." (Id. ¶ 61 (alteration added) ).
Plaintiffs ask the Court to declare the USCIS's denial of the L-1A petition as unlawful; enjoin the USCIS from deciding cases based on Buy American and Hire American or other pronouncements of the White House; enjoin U.S. government officials in the White House, DHS, and the USCIS from denying L-1A petitions by using criteria not disclosed to the public; require the USCIS approve Canal Media's L-1A and change-of-status petition on behalf of Mr. Archila; and award Plaintiffs their fees and costs. (See id. 17-18).
B. The Parties' Briefing
Defendants seek dismissal of the case under Federal Rule of Civil Procedure 12(b)(1), contending the Court lacks jurisdiction under the APA because Mr. Archila is still in removal proceedings before an immigration judge ("IJ"), and so there has not been a final agency action under the APA. (See Mot. 1, 7-12). Defendants explain it is irrelevant that remedies available in removal proceedings before the IJ are not identical to that which Plaintiffs seek here -- a grant of the application for *1317 L-1A status. (See Reply 1-5). Defendants argue Plaintiffs' claims are barred by 8 U.S.C. section 1252(g), which eliminates judicial review over "any cause or claim by or on behalf of any alien ... arising from the decision or action ... to commence proceedings, adjudicate cases, or execute removal orders[.]" (Mot. 12-14; Reply 5-7 (quoting 8 U.S.C. § 1252(b)(9) (alterations added) ) ). Finally, Defendants assert 8 U.S.C. section 1252(b)(9) channels Plaintiffs' claims to the court of appeals as part of review of a final order of removal, not to a district court. (See Mot. 14-17; Reply 4-5; Defs.' Surreply 2-3).
For their part, Plaintiffs insist DHS's denial of the L-1A petition and change of status application is a final agency action because: (1) the denial meets the two-prong finality test of Bennett v. Spear , 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ; (2) ongoing immigration proceedings against Mr. Archila do not affect finality as the immigration court lacks jurisdiction to review the denial of a nonimmigrant visa petition; and (3) the authorities Defendants rely on actually show why the I-129 petition denial challenged here is final agency action. (See Resp. 7-18). Plaintiffs state the IJ's recent decision to continue Mr. Archila's removal proceeding reflects the finality of the USCIS's decision. (See Pls.' Surreply 1-3). Plaintiffs next argue the denial of the L-1A petition does not "arise from" removal proceedings under 8 U.S.C. section 1252(g) or 1252(b)(9), and the Eleventh Circuit lacks jurisdiction to consider the merits of the L-1A petition denial on direct review of a final removal order. (See Resp. 18-20; Pls.' Surreply 3-5).
The Court considers these competing arguments in its discussion below.
II. STANDARDS
The party invoking federal jurisdiction has the burden of proving its existence. See Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 103-04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways - a facial attack or factual attack. See Menchaca v. Chrysler Credit Corp. , 613 F.2d 507, 511 (5th Cir. 1980). A facial attack asserts a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint. See id. In a facial attack, the plaintiff's allegations are taken as true for the purposes of the motion, see id. ; and the plaintiff is afforded safeguards like those provided in challenging a Rule 12(b)(6) motion raising the failure to state a claim for relief, see Lawrence v. Dunbar , 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).
In contrast, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." Menchaca , 613 F.2d at 511 (citation omitted). In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case. See Lawrence , 919 F.2d at 1529 (citation omitted). No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim. See id. (citation omitted). Moreover, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States , 285 F.3d 947, 951 (11th Cir. 2002) (alteration added; citations and footnote call number omitted).
"A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."
*1318 Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc. , 524 F.3d 1229, 1232 (11th Cir. 2008) (citing Crotwell v. Hockman-Lewis Ltd. , 734 F.2d 767, 769 (11th Cir. 1984) ).
According to the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (alteration added). In contrast, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." Id. (alteration added). The Eleventh Circuit has held federal jurisdiction is lacking under Rule 12(b)(1) when the administrative action at issue is not final within the meaning of section 704. See LabMD, Inc. v. F.T.C. , 776 F.3d 1275, 1278 (11th Cir. 2015). Some other courts have evaluated the issue whether there is a final agency action under the APA as a merits question under Rule 12(b)(6). See Jama v. Dep't of Homeland Sec. , 760 F.3d 490, 494 & n.4 (6th Cir. 2014) (because the district court had jurisdiction over the plaintiff's APA claims pursuant to the federal question statute, 28 U.S.C. section 1331, dismissal under Rule 12(b)(1) was improper; instead, the APA's "final agency requirement" should be considered under Rule 12(b)(6) in examining whether the complaint states a claim for relief).[2]
III. DISCUSSION
A. There is no Final Agency Action
As stated, the APA authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court ...." 5 U.S.C. § 704 (alterations added). Judicial review is not available until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule ...." Darby v. Cisneros , 509 U.S. 137, 146, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (alteration added). "[T]he agency action is [then] 'final for the purpose of this section' and therefore 'subject to judicial review ....' " Id. (quoting 5 U.S.C. § 704 (alterations added) ).
In the Amended Complaint, Plaintiffs assert they have exhausted their administrative remedies; in other words, the USCIS's decision denying the I-129 petition is final. To be final, agency action must satisfy two requirements: "[f]irst, the action must mark the consummation of the agency's decisionmaking process -- it must not be or a merely tentative or interlocutory nature[,]" and "second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett , 520 U.S. at 177-78, 117 S.Ct. 1154 (internal quotation marks and citations omitted; alterations added).
The required "finality" is absent here. Finality "is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury ...." Darby , 509 U.S. at 144, 113 S.Ct. 2539 (internal quotation marks and citation omitted; alteration added). If an initial agency action may be modified or reversed during administrative review, the decision is necessarily non-final for purposes of judicial review, as "the agency proceeding is *1319 ongoing." LabMD, Inc. , 776 F.3d at 1278 (citing Bennett , 520 U.S. at 178, 117 S.Ct. 1154 ).
Removal proceedings against Mr. Archila commenced in 2016. It is noteworthy that Mr. Archila recently requested the IJ continue his removal hearing based on the existence of this lawsuit, and the IJ granted his request on November 8, 2018. (See [ECF No. 55-1] ). Mr. Archila is scheduled to appear before an IJ in August 2019 (see Mot. 8), and the IJ will have the power to grant him similar relief to what he seeks here -- lawful status in the United States. If the IJ rules against Mr. Archila, Plaintiffs may appeal to the Board of Immigration Appeals ("BIA") and from there to the Eleventh Circuit Court of Appeals. See 8 U.S.C. § 1252 ; see also Kebe v. Naplitano , No. 1:11-cv-01130-JMS-DKL, 2012 WL 1409626, at *4 (S.D. Ind. Apr. 23, 2012) ("Because removal proceedings have already begun, [the plaintiff] will appear before an IJ with the power to set aside any erroneous denial of adjustment. If the IJ rules against him, [the plaintiff] can appeal to the [BIA] and, from there, directly to the Seventh Circuit." (alterations added; citation omitted) ).
The case of Jama v. Department of Homeland Security , 760 F.3d 490 (6th Cir. 2014), is instructive. In Jama , the USCIS: terminated the plaintiff's refugee status based on the plaintiff's fraud and denied his applications for status adjustment and fraud waiver; initiated removal proceedings against the plaintiff; and did not rule on the plaintiff's application for asylum and for withholding of removal before its termination decision. See id. at 492. While his asylum claims were pending in immigration court, the plaintiff sued, asserting jurisdiction under 28 U.S.C. section 1331 (federal question), 28 U.S.C. section 2201 (Declaratory Judgment Act), and 5 U.S.C. sections 555 and 701 (the APA), seeking declarations the USCIS's actions were unlawful and he continued to be a derivative refugee. See id. at 493. The parties acknowledged the USCIS's actions, including terminating the plaintiff's refugee status and denying his status adjustment application, were reviewable in federal court at some stage before the plaintiff's removal. See id. at 494.
As reasoned by the court in Jama , because no statute precluded judicial review of the USCIS's termination of refugee status or denial of a status adjustment application, nor made those actions reviewable in district court, the plaintiff had to allege his "injury stem[med] from a final agency action for which there is no other adequate remedy in court." Id. at 495 (alteration added) (quoting Bangura v. Hansen , 434 F.3d 487, 500 (6th Cir. 2006) (citing 5 U.S.C. § 704 ) ). The Jama panel therefore focused on whether there was a final agency action, providing the following explanation, equally applicable here:
The agencies' decisionmaking process consummates when they issue a final decision regarding an alien's immigration status. Termination of refugee status and denial of a status adjustment application are intermediate steps in the removal of an alien, and not the consummation of the agencies' decisionmaking on the alien's immigration status. Further administrative relief is available in the removal proceeding which necessarily follows a decision to terminate an alien's refugee status. See C.F.R. § 207.9. [The plaintiff's] removal proceedings are presently ongoing; the IJ has not yet considered his application for asylum and for withholding of removal. If [his] application is granted, he will be permitted to remain lawfully in the United States notwithstanding USCIS's decision to terminate his refugee status or the IJ's decision regarding removability.
*1320 Thus, USCIS's decision is merely an intermediate decision at this stage of the proceedings.
Id. at 496 (alterations added). Only after the agency made a final decision on the plaintiff's immigration status at the end of removal proceedings and following an appeal to the BIA could the plaintiff seek review of the complained-of intermediate agency actions in the court of appeals. See id. at 497.
Another instructive case on this point is the Eleventh Circuit's decision in Ibarra v. Swacina , 628 F.3d 1269 (11th Cir. 2010) (per curiam). In Ibarra , the district court dismissed the plaintiff's APA complaint seeking review of the USCIS's denial of an I-485 application for adjustment to legal permanent resident status for lack of subject matter jurisdiction, and the plaintiff appealed. See id. at 1269. The plaintiff conceded she was renewing her adjustment of status application in her then-pending removal proceedings. See id. at 1270.
The Eleventh Circuit affirmed the district court's order dismissing the case for lack of subject matter jurisdiction because "[t]he decision on [the plaintiff's] adjustment of status is not yet final, as an adjustment of status 'decision is final where there are no deportation proceedings pending in which the decision might be reopened or challenged.' " Id. (quoting Pinho v. Gonzales , 432 F.3d 193, 202 (3d Cir. 2005) (alterations added; footnote call number omitted) ); see also Gupta v. U.S. Atty. Gen. , 439 F. App'x 858, 860 (11th Cir. 2011) (affirming dismissal of complaint challenging denial of application for adjustment of status, as "[n]o jurisdiction lies under the APA or the Mandamus Act because [the plaintiff] is in removal proceedings[,]" and observing because the plaintiff "is in removal proceedings, the USCIS no longer has jurisdiction to consider his claims for relief, and therefore, the district court could not grant relief even if it had jurisdiction ...." (alterations added; citations omitted) ).
Plaintiffs insist the denial of their I-129 applications constitutes final agency action under the APA because immigration courts have no jurisdiction to adjudicate or review visa petition denials. (See Resp. 7). Yet, as noted by Defendants, that an IJ cannot provide an alien relief identical to the one Plaintiffs seek here in federal district court does not render the USCIS's decision final under the APA. (See Mot. 7-11; Reply 2-5). To the contrary, where an initial agency action is capable of being modified during further administrative review, the initial decision is not final under the APA while administrative review, even before a different agency, is pending. (See Reply 3 (citing LabMD, Inc. , 776 F.3d at 1278-79 ) ).
The decision in Dhakal v. Sessions , 895 F.3d 532 (7th Cir. 2018), illustrates this point. In Dhakal , the plaintiff sued under the APA and Declaratory Judgment Act following the Director of the Chicago Asylum Office's denial of his application for asylum. See id. at 533. The plaintiff had not yet been placed in removal proceedings, and the Attorney General sought dismissal for lack of jurisdiction, arguing agency action was not final, as the immigration courts had not yet passed on the asylum claim in removal proceedings. See id. at 533-34.
The Seventh Circuit affirmed the district court's dismissal order, holding the absence of final agency action precluded relief under the APA. See id. at 534. The Director's decision did not "mark[ ] the consummation of the agency's decisionmaking process" because "[o]nce the Department [of Homeland Security] seeks removal and asylum is asserted as a defense, the immigration court develops the more *1321 extensive factual record for review by the Board and, where appropriate, our ultimate review." Id. at 539 (internal quotation marks and citation omitted; alterations added). "The process recognizes that immigration judges and the Board possess expertise in these matters and thus should be given the first chance, before the federal courts, to apply that expertise." Id. at 539-40 (internal quotation marks and citation omitted). If and when asylum is denied at the end of that process by the immigration courts, the Board's decision, and not the Director's, will be reviewed, confirming the Director's decision is more like a tentative recommendation than a final decision. See id. at 540.
So too, here, Mr. Archila can raise his retroactivity and due process claims following his removal proceedings in an appeal to the Eleventh Circuit under 8 U.S.C. section 1252(a). Mr. Archila can then challenge any removal order as well as the intermediate agency actions of which he complains in this case. See Jama , 760 F.3d at 497 ; J.E.F.M. v. Lynch , 837 F.3d 1026, 1031-32 (9th Cir. 2016).
B. Plaintiffs' Claims Must Be Channeled to the Court of Appeals
What Defendants propose, and what the Court finds by this Order dismissing the Amended Complaint due to the absence of final agency action, "is consistent with Congress' clear intent to streamline the review process by consolidat[ing] and channel[ing] review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." Jama , 760 F.3d at 496 (internal quotation marks and citations omitted; alterations in original). A review of the INA's relevant statutory provisions and related case law supports this conclusion.
Because the APA does not provide jurisdiction where "statutes preclude judicial review," 5 U.S.C. section 701(a)(1), the Court must first ascertain whether the INA precludes judicial review of agency action, such as the decision challenged here. Significantly, Congress has eliminated judicial review over "any cause or claim by or on behalf of any alien ... arising from the decision or action ... to commence proceedings, adjudicate cases, or execute removal orders[.]" 8 U.S.C. § 1252(g) (alterations added). Under 8 U.S.C. section 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action ... to remove an alien from the United States ... shall be available only in judicial review of a final order[.]" Id. (alterations added). Under section 1252(a)(5), "a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means for judicial review of an order of removal[.]" Id. (alterations added).
Section 1252(g) bars Plaintiffs' claims because this action was filed after Mr. Archila's removal proceedings commenced and unmistakably sought to moot those proceedings. (See, e.g. , Complaint [ECF No. 1] ¶ 16 ("[I]f this Court instructs USCIS to approve the I-129 petition filed on behalf of Mr. Archila, removal proceedings should be terminated." (alteration added) ). That Plaintiffs seek to stop ongoing removal proceedings rather than prevent their commencement is immaterial. See Thunder Basin Coal Co. v. Reich , 510 U.S. 200, 208-09, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (addressing Federal Mine Safety and Health Amendments Act, 30 U.S.C. section 801, and stating the "Act's comprehensive review process does *1322 not distinguish between preenforcement and postenforcement challenges, but applies to all violations of the Act and its regulations .... The Act expressly authorizes district court jurisdiction in only two provisions ...." (alterations added; citations omitted) ). As Defendants correctly observe, "Plaintiff[s] cannot escape the scope of [ ] [section] 1252(g) merely by filing suit before removal proceedings have been completed. To do so would undermine the entire statutory scheme that Congress created to resolve removal proceedings." (Mot. 13-14 (alterations added) ).
To the extent Plaintiffs bring constitutional or other claims they insist the IJ or the BIA cannot resolve (see Resp. 11-13), section 1252(b)(9) nevertheless requires judicial review of such claims take place after a final removal order. Indeed, Section 1252(b)(9)"was designed to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals [under section 1252(a)(5) ]." Aguilar v. U.S. Immigration and Customs Enforcement Div. of Homeland Sec. , 510 F.3d 1, 9 (1st Cir. 2007) (emphasis in original; alteration added; citation omitted). Section 1252(b)(9) is " 'breathtaking' in scope and 'vise-like' in grip," "swallow[ing] up virtually all claims that are tied to removal proceedings." J.E.F.M. , 837 F.3d at 1031 (alteration added; quoting Aguilar , 510 F.3d at 9 ). Sections 1252(b)(9) and 1252(a)(5), "[t]aken together," "mean that any issue - whether legal or factual - arising from any removal-related activity can be reviewed only through the PFR [petition for review] process." Id. (emphasis in original; alterations added; citations omitted).
According to Defendants, any claim Plaintiffs might have, including any constitutional claims, must be raised in Mr. Archila's removal proceeding and potentially, in a petition for review filed in the Eleventh Circuit Court of Appeals, once administrative remedies have been exhausted. (See Mot. 16). Defendants posit how an individual facing removal frames his claims is irrelevant, as any challenge to the removal proceedings must be channeled through the PFR process. (See id. 15). Defendants explain Plaintiffs' claims are inextricably linked to Mr. Archila's removal proceedings because he is seeking injunctive relief which, if granted, would mean the removal proceedings should not have been initiated. (See id. ). Finally, Defendants insist the claims here must be funneled through the direct-appeal process following final agency action given Congress's intended scheme. (See id. 15-16). The Court agrees.
"When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the ultimate order of removal, it is prohibited by section 1252(a)(5)." Martinez v. Napolitano , 704 F.3d 620, 623 (9th Cir. 2012) (citing Morales-Izquierdo v. DHS , 600 F.3d 1076, 1082-83 (9th Cir. 2010) (finding challenge to adjustment of status was barred by section 1252(a)(5) because order of removal was contingent on the status determination); Estrada v. Holder , 604 F.3d 402, 408 (7th Cir. 2010) (affirming dismissal for lack of jurisdiction because if the plaintiff succeeded in contesting the rescission of his permanent-resident status on the merits, the "order of removal by the IJ and affirmed by the BIA -- which rested on the conclusion that [plaintiff] is no longer a lawful permanent resident - would necessarily be flawed." (alteration added) ) ).
Plaintiffs' claims here are inextricably linked to any ultimate removal order against Mr. Archila. Tellingly, in the *1323 Amended Complaint, Plaintiffs request the Court "[i]ssue an injunction requiring [the] USCIS to approve Canal A. Media's L-1A and change-of-status petition on behalf of Mr. Archila." (FAC 18, ¶ d. (alterations added) ). If the Court grants that request, as Mr. Archila himself recognized in his "Status Report and Motion to Continue Proceedings" filed before the IJ, such order would signify Plaintiffs have succeeded in this "federal lawsuit, [and Mr. Archila] will not be removable as charged." (Reply Ex. 1, ¶ 14 (alteration added) ).
Plaintiffs are required to raise their claims, including their constitutional claims, in the removal proceedings and after exhausting administrative remedies, before the Eleventh Circuit. They may not "evade the bars in 8 U.S.C. [section] 1252 by characterizing [their] claim as a challenge not to [ ] removal, but rather to" any defects in the USCIS's denial of Mr. Archila's L-1A application. Mata v. Sec. of Dept. of Homeland Sec. , 426 F. App'x 698, 700 (11th Cir. 2011) (alterations added); see also id. (noting "in substance" the plaintiff's "complaint seeks review of his order of removal" and "seeks to litigate the issue of whether he received notice prior to the rescission of his LPR [lawful permanent resident] status, and accordingly, whether he was appropriately found removable" (alteration added) ).
Finally, the Court notes it is of no moment that Mr. Archila's petition was denied before his removal proceedings. This is so because section 1252's reach is not limited to post-removal proceeding decisions or actions. See, e.g. , 8 U.S.C. § 1252(b)(9) ("Judicial review ... arising from any action taken or proceeding brought to remove an alien ...." (alterations added) ); id. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by the Attorney General to ... execute removal orders ...." (alterations added) ); Aguilar , 510 F.3d at 10 (noting "the petitioners insist that the challenged actions occurred prior to the institution of any formal removal proceedings, and, thus, are beyond the compass of [ section 1252(b)(9)'s] zipper clause .... [N]othing in the statute limits its reach to claims arising from extant removal proceedings .... [S]uch a reading would render the word 'action' superfluous and effectively excise it from the statute." (alterations added) ).
IV. CONCLUSION
The INA provides for the review of any legal question, including constitutional claims, in the court of appeals following the exhaustion of administrative remedies. See 8 U.S.C. § 1252(a)(2)(D). Plaintiffs' due process and related claims challenging the legality of the USCIS's denial of the L-1A petition based on a novel "capital contribution" requirement may be presented to the Eleventh Circuit Court of Appeals should Mr. Archila be ordered removed following his removal proceedings. See, e.g., Qureshi v. Holder , 663 F.3d 778, 780 (5th Cir. 2011) (noting "[n]either the IJ nor the BIA has the authority to review USCIS's decision to terminate asylum[,] but "if the BIA upholds the final order of removal, the ex-asylee may then appeal to the appropriate circuit court to review 'constitutional claims or questions of law' underlying the final order of removal, including direct legal challenges to USCIS's original termination decision." (internal citations and footnote call number omitted; alterations added) ).
The Court will not interfere with the ongoing removal proceedings by ruling on a central issue that is inextricably intertwined with any removal order. In sum, the Court agrees with Defendants it lacks *1324 the jurisdiction to entertain Plaintiffs' claims.
For the foregoing reasons, it is
ORDERED AND ADJUDGED that Defendants, United States Citizenship and Immigration Services, the Department of Homeland Security, USCIS Director L. Francis Cissna, DHS Secretary Kirstjen Nielsen, and USCIS California Service Center Director Kathy A. Baran's Motion to Dismiss [ECF No. 37] is GRANTED . The Amended Complaint is dismissed without prejudice, and the Clerk is instructed to CLOSE the case.
DONE AND ORDERED in Miami, Florida, this 27th day of March, 2019.

Plaintiffs also allege the action is brought under 28 U.S.C. section 1346 because the United States is a defendant; as well as 28 U.S.C. section 2201, the Declaratory Judgment Act. (See Am. Compl.). Notably, as the United States is not a named Defendant in the case, section 1346 is inapplicable. (See Mot. 7, n.1). And the Declaratory Judgment Act does not independently confer subject matter jurisdiction upon the federal courts. See Borden v. Katzman , 881 F.2d 1035, 1037 (11th Cir. 1989) (citation omitted).

Defendants bring their Motion under Rule 12(b)(1), and consistent with the Eleventh Circuit's mandate, the Court agrees with Defendants that the question before the Court is jurisdictional. Nevertheless, the Court also relies on persuasive authority from other circuits analyzing the identical question regarding the finality of an agency action under the APA, albeit in a Rule 12(b)(6) posture.